UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT D. YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:13-cv-1761-WTL-DKL |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Robert D. Young requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The Court now rules as follows.

### I.      PROCEDURAL HISTORY

Young filed his applications for DIB and SSI on January 14, 2011, alleging disability beginning June 1, 2010, due, in large part, to depression. Young's applications were initially denied on March 31, 2011, and again upon reconsideration on May 23, 2011. Thereafter, Young requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on February 16, 2012, via video conference before ALJ Rosanne M. Dummer. Young and his counsel appeared in Indianapolis, Indiana, and the ALJ presided over the hearing from Falls Church, Virginia. During the hearing, Ray O. Burger testified as a vocational expert, and Dia Hogg, Young's case manager, also appeared and testified. A second video conference was held

on September 5, 2012, so that Young's counsel could question the consulting medical expert Dr. Stuart Gitlow. Stephanie R. Archer also testified at the hearing as a vocational expert. On September 14, 2012, the ALJ issued a decision denying Young's applications for benefits. The Appeals Council upheld the ALJ's decision and denied a request for review on September 5, 2013. This action for judicial review ensued.

## II.  EVIDENCE OF RECORD

The evidence of record is well documented in the ALJ's decision and need not be recited here. Relevant facts, however, are noted in the discussion section below.

## III.  APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d) (1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

On review, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.,* and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Id.*

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Young had not engaged in substantial gainful activity since June 1, 2010, his alleged onset date. At step two, the ALJ concluded that Young suffered from the following severe impairments: anxiety, depression, and a history of polysubstance dependence reportedly in remission. At step three, the ALJ determined that Young's severe

3

impairments did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Young had the residual functional capacity ("RFC") to perform

> a full range of work at all exertional levels but with the following nonexertional limitations: secondary to mental limitations, he is able to perform simple routine repetitive type tasks. He can sustain concentration for two-hour segments of time. He can concentrate for simple tasks for extended periods of two-hour segments in an eight-hour day. He is limited to brief and superficial contact with others, such as coworkers, supervisors, and the general public. He is able to adapt as needed in work settings involving . . . simple, routine, repetitive type tasks.

Tr. at 14. Given this RFC, the ALJ determined at step five that Young was capable of performing his past relevant work as a construction laborer and material handler. Accordingly, the ALJ concluded that Young was not disabled as defined by the Act from June 1, 2010, through the date of her decision.

## V. **DISCUSSION**

Young advances several objections to the ALJ's decision; each is addressed below.

### A. Listing 12.04

First, Young argues that he "met his burden of proof by offering . . . evidence proving that his combined mental impairments met or medically equaled Listing 12.04." Young's Br. at 14. The Court does not agree.

To satisfy Listing 12.04B (the prong most relevant to Young's argument), Young must show that he suffers from at least two of the following: (1) Marked restriction of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, or pace, or (4) repeated episodes of decompensation, each of extended duration. Young argues that "[t]he 'B' criteria were proved . . . by the consistent GAF assessments of 40 which is defined by the scientific field of psychiatry to mean that [he] was not able to keep a job and thus was totally disabled." Young's Br. at 15-16.

4

Young's assertion that his GAF scores prove total disability is misguided. "[N]owhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citations and quotations omitted). Moreover, the Social Security Administration has concluded that GAF scores do "not have a direct correlation to the severity requirements in [the] mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 F.R. 50746-01. Simply put, the GAF scores alone do not satisfy Listing 12.04, or the paragraph B criteria.

Young further argues that "[t]he ALJ arbitrarily rejected the multiple . . . assessments of [his] GAF at 40, proving total disability," and "the 1-30-12 psychiatrist's functional evaluation by Dr. Siddiqui . . . which found Marked impairment in twelve functions." Young's Br. at 14. The ALJ, however, did not "arbitrarily reject" the GAF assessments or Dr. Siddiqui's report. Young's GAF ratings were noted in the decision and considered by the ALJ. The ALJ, however, specifically noted that "the Commissioner of the Social Security Administration has declined to endorse the GAF scores for use in the Social Security disability programs, and has indicated that such scores have no direct correlation t the severity requirements of the mental disorders listings." Tr. at 16. Additionally, the ALJ discussed Dr. Siddiqui's report and concluded that Dr. Siddiqui's assessment was "not consistent with the overall evidence and [did] not adequately address the impact of substance abuse on the claimant's functioning. . . . Moreover, there is a scarcity of treatment notes from Dr. Siddiqui to corroborate his assessment." *Id.* at 22. Clearly, the ALJ did not "arbitrarily reject" Dr. Siddiqui's report. The Court further notes that the ALJ's reasoning for discrediting this information was not in error.

Young points to no other medical evidence showing that Listing 12.04 is met. Thus, the Court finds that the ALJ's consideration of Listing 12.04 was not improper under the circumstances, and remand is not warranted.[2]

## B. Credibility Determination

Next, Young argues generally that the ALJ's credibility determination was "patently erroneous" because it was "contrary [to] the evidence and contrary to Social Security Ruling 96-7p." Young's Br. at 20. He asserts that "the ALJ ignored or misinterpreted the objective evidence . . . which proved [that Young] was totally disabled." *Id.* Again, the Court does not agree.

In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify her finding with specific reasons. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). "Furthermore, the ALJ may not discredit a claimant's testimony about [her] pain and limitations solely because there is no objective medical evidence supporting it." *Id.* (citations omitted). Of course, district courts "afford a credibility finding 'considerable deference,' and overturn [a finding] only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 36 F.3d 751, 758 (7th Cir. 2004)).

First, Young vaguely argues that "the ALJ ignored or misrepresented the objective evidence." Young's Br. at 20. He does not, however, identify with any specificity what evidence

---

[2] In his reply brief, Young argues for the first time that the ALJ erred when "she did not question the claimant or make any other effort to determine why he failed to obtain mental health treatment or failed to comply with prescribed treatment." Young's Reply at 5. Because this argument was not addressed in his initial brief, this argument is considered waived by the Court. *See Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011) ("[I]t is well-established that arguments raised for the first time in the reply brief are waived.") (citations omitted).

the ALJ ignored or misrepresented. To the extent he refers to the GAF scores or Dr. Siddiqui's report, as discussed above, the ALJ did not ignore or misinterpret that evidence.

Young also attempts to fault the ALJ for using boilerplate language to explain her credibility finding. *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012). The ALJ, however, did not use the "boilerplate" language the Seventh Circuit has deemed "meaningless" in other cases. Rather, the ALJ stated that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but . . . the claimant's credibility statements concerning the intensity, persistence and limiting effects of these symptoms to be poor." Tr. at 19. Thus, this argument is also misguided.

Notwithstanding the foregoing, the Court finds that the ALJ's credibility determination was appropriate in this case. The ALJ considered the relevant factors and justified her finding with specific reasons. Accordingly, remand is not warranted.

### C. Step Four/Step Five Determination

Lastly, Young argues that "the ALJ's [RFC] assessment did not accurately describe [Young's] impairments." Young's Br. at 24. Specifically, it "did not address the impact of [Young's] mental limitations." *Id.* Thus, according to Young, the ALJ's determinations at steps four and five were not supported by substantial evidence. This argument, however, is premised on the idea that Young's impairments are disabling and more severe than what was found by the ALJ. As noted above, however, the ALJ's consideration of Young's mental impairment was not improper. Additionally, the ALJ's determination at step five accounted for Young's documented

impairments, RFC, age, education, and work experience, as well as the vocational expert's written testimony. Accordingly, the ALJ's step five analysis does not warrant remand.[3]

## VI. CONCLUSION

In this case, the ALJ satisfied her obligation to articulate the reasons for her decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **AFFIRMED**.

SO ORDERED: 2/09/15

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

[3] In his reply brief, Young argues for the first time that, according to "*Yost*," "a claimant's mental impairments cannot be accurately described simply by limiting [him] to 'simple, repetitive tasks'[.]" Young's Reply at 7. There is no citation to *Yost*, however, in Young's initial brief; nor is this specific argument made in his initial brief. As such, the argument is considered waived.